UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRIS PHILLIPS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE SEATTLE TIMES COMPANY,<br><br>    Defendant. | CASE NO. C11-561RSM<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter is before the Court for consideration of defendant The Seattle Times Company's ("Seattle Times") motion to dismiss and motion pursuant to RCW 4.24.525 to strike claims. Dkt. # 7. For the reasons set forth below, the motion to dismiss shall be granted, and the motion to strike shall be denied as moot.

FACTUAL BACKGROUND

Plaintiff Chris Phillips, appearing *pro se*, filed this complaint for defamation and other torts pursuant to the diversity jurisdiction of this Court, asserting that he is a resident of Nova Scotia, Canada, or Massachusetts, and that the amount in controversy exceeds $75,000. Amended Complaint, Dkt. # 4, ¶¶ 2,4. The Court has jurisdiction of this matter pursuant to 28

U.S.C. § 1332(a)(1) or (2). This is one of nine such complaints filed by plaintiff regarding events that occurred in March and April, 2008, when plaintiff resided in Washington State.[1]

The complaint alleges that plaintiff, who has both medical (M.D.) and legal (J.D.) degrees, was "a respected LASIK surgeon and ophthalmologist" who practiced medicine in Renton, Washington. Amended Complaint, ¶ 9. He was the owner of, and employed by, Seattle Eye Surgeons, doing business as Lomas LASIK and Eye Care Center. *Id*., ¶ 10. According to the complaint, on February 29, 2008, plaintiff "temporarily closed Lomas LASIK and Eye Care Center to remodel and restructure the business," and laid off several employees. *Id*., ¶¶ 18, 19. Shortly after the closure, defendant "negligently began publishing numerous false statements" regarding plaintiff's decision to temporarily close the practice. *Id*., ¶ 20. These statements, according to plaintiff, included allegations that plaintiff had disappeared, vanished, was missing, and "unexpectedly left town." *Id*., ¶¶ 24-28. Plaintiff alleges that he had previously informed defendant that he was in the hospital.[2] *Id*., ¶ 21. He subsequently informed defendant again of his hospitalization, as did previous employees. ¶¶ 29-32. Nevertheless, according to plaintiff, this defendant "knowingly continued publishing the above false allegations." *Id*., ¶ 33. As a result, plaintiff's reputation was damaged, his business was destroyed, and he had to declare bankruptcy, filing for personal bankruptcy on July 2, 2008. *Id*., ¶¶ 61-62.

---

[1] *See*, *Phillips v. Mayes*, C10-2067RSM; *Phillips v. Lomas*, C11-213RSM; *Phillips v. Hearst Corporation*, C11-377RSM; *Phillips v. Fisher Communications Inc*., C11-378RSM; *Phillips v. KIRO-TV, Inc*., C11-379-RSM; *Phillips v. World Publishing Company*, C11-558RSM; *Phillips v. Newspaper Holdings Inc*., C11-559RSM; *Phillips v Oklahoma Publishing Company, Inc., et al.*, C11-560RSM; *Phillips v. Seattle Times Company*, C11-561RSM.

[2] Documents filed by plaintiff later in the case indicate that plaintiff was about this time referred to the Menniger Clinic for a Comprehensive Psychiatric Assessment by the Washington State Physician's Health Program. Declaration of Chris Phillips, Dkt. # 38, Attachment, p. 1. Plaintiff was at the clinic for evaluation from March 3 to March 7, 2008, and returned for treatment from March 22, 2008 to April 18, 2008. *Id*.

On these and other factual allegations, including an allegation that plaintiff was stabbed near his home sometime in April, 2009 as a result of the media coverage of his actions, plaintiff asserts various tort claims against the Seattle Times. The causes of action asserted are intentional and negligent infliction of emotional distress (Counts I and II), defamation and defamation per se (Counts III and IV), intentional interference with contractual relations (Count V), interference with a prospective advantage (Count VI), publication in a false light (Count VII) and civil harassment (Count VIII). Defendant has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint and all counts therein for failure to state a claim. Defendant has also moved pursuant to RCW 4.24.525, Washington's "anti-SLAPP" law[3], to strike all claims and to recover the statutory penalty of $10,000. Dkt. # 7.

PROCEDURAL BACKGROUND

Defendant's motion to dismiss was filed on June 9, 2011, and properly noted under the Court's local rules for hearing on the fourth Friday thereafter, July 1, 2011. Plaintiff's response was due June 27, 2011. Local Rule CR 7(d)(3). On June 20, plaintiff filed a motion for extension of time to respond, contending that he had motion responses due in four of his pending cases all on the same day, July 1; that he was working on a brief related to a petition for certiorari to the United States Supreme Court in a separate case; that he had to travel to Boston, Seattle, and Oklahoma over the next seven days; and that he was exhausted from all the work.

---

[3] "SLAPP" in the statutory context is an acronym for Strategic Lawsuits Against Public Participation. In passing RCW 4.24.525, the legislature expressed a concern over lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." RCW 4.24.525, Notes, 2010 c 118. The statute provides for the rapid resolution of a special motion, filed by the defendant, to strike the SLAPP. The defendant's rights under an anti-SLAPP statute are in the nature of immunity from suit. *Batzel v. Smith*, 333 F. 3d 1018, 1025 (9th Cir. 2003) (addressing California's anti-SLAPP statute.)

Dkt. # 8. Defendant, in response, re-noted the motion to dismiss to July 15, 2011, and filed a statement that it did not oppose plaintiff's motion. Dkt. # 11, 14. Defendant then re-noted the motion again, to July 22, 2011. Dkt. # 15. The Court acknowledged this and advised plaintiff that his opposition to the motion to dismiss and motion to strike was due July 18, 2011. Dkt. # 16.

On July 18, plaintiff filed a handwritten motion for a stay of proceedings, sent from the Renton city jail, where he was in custody. Dkt. # 17. He followed up with a legible typed version on July 26, 2011 after he was released. Dkt. # 18. In his motion for a stay of proceedings (construed by the Court as a motion for extension of time to respond to the motion to dismiss, and noted for July 29, 2011), plaintiff explained that he traveled to Seattle on July 12, 2011 to appear in Renton Municipal Court, and was taken into custody. As plaintiff explains, "[o]n or about February 2, 2009 Phillips was sentenced by . . . Renton Municipal Court for providing alcohol to minors, breach of peace, and making a false statement." Dkt. # 18, p. 2. He further explains that his sentence was stayed pending his appeal to King County Superior Court, and that upon denial of his appeal he was required to register with Electronic Home Detention. Apparently the Renton Municipal Court had no record that plaintiff registered as required, and ordered him to appear in person on July 12, 2011. *Id*., p. 4. Plaintiff traveled from his home in Nova Scotia, Canada to appear, and was taken into custody on that day.

Plaintiff's motion to stay proceedings challenged his underlying conviction and also indicated that he was surprised by his detention, so he could not possibly have filed his opposition to the motion to dismiss in anticipation. He asked this Court not only to excuse the time that he was in custody, but also allow time for a family trip to Poland, from which he would return on August 15, 2011, and additional time to "repair his relationship with his family," as

well as complete discovery responses in another case, and complete his forty hours of community service as ordered by the Renton Municipal Court. *Id*., pp. 6-7. He asked that the motion to dismiss be re-noted to the middle of September 2011. *Id*., p. 6. He filed this same request in several of his other pending cases.

The Seattle Times timely opposed the motion for a stay of proceedings/ extension of time. Dkt. # 20. Plaintiff then filed an untimely motion to extend the time to file his reply on his pending motion to stay proceedings, complaining that defendants in six of his pending cases had filed opposition briefs on the same day, giving him only two days to work on all six replies. Dkt. # 22. Plaintiff asserted that he was "overwhelmed" by the demands of his litigation (all of which he initiated), and that during the two days he was allowed for filing his numerous replies, he also had to fly from Seattle to Boston, drive to Halifax, pack for his trip, and board a flight from Halifax to Europe. *Id*., p. 2. He stated that he attempted to work on his legal matters on the flight from Seattle to Boston but his laptop ran out of power. *Id*. Upon arrival in Boston, he had to sleep before driving to Halifax, and then experienced "minor car problems" on the drive, causing further delay. *Id*. Plaintiff's reply on his motion to stay proceedings was then filed on August 2, 2011. Dkt. # 22. The Court, despite defendant's objections, considered it. *See*, Order on Pending Motions, Dkt. # 27, p. 2.

In ruling on plaintiff's motion to stay proceedings, the Court noted that the situation of which he complained was largely of his own making, as half the motions originally noted for July 1, 2011 were plaintiff's own. *Id*., p. 3. Three others, namely three motions to dismiss, were re-noted to July 22, 2011. *Id.* The timing of these motions to dismiss was driven by the dates on which plaintiff filed his complaints, and thus was a matter within plaintiff's control. *Id*. It was also plaintiff's choice to schedule a family trip to Europe during this period of time.

The Court accordingly granted plaintiff's motion to stay proceedings only in part, re-noting the Seattle Times' motion to dismiss to August 26, 2011. Dkt. # 27. The Court directed that plaintiff's response was due August 22, 2011, and stated clearly and unequivocally that "[n]o further extensions shall be granted to plaintiff." *Id*., p. 4. This Order was filed on August 12, 2011, giving plaintiff notice that he had ten additional days to respond to the motion which had been filed more than **two months** earlier. The same Order was filed in two other cases with pending motions to dismiss, in which plaintiff had filed the identical motion to stay proceedings.

Plaintiff failed to file his opposition to the Seattle Times' motion to dismiss on August 22, 2011, as ordered. Nor did he file it on August 23 or August 24. It was not until August 25, 2011, that plaintiff filed his opposition in two separate documents, which exceeded the allowable page limits set forth in Local Rule CR 7(e). Dkt. ## 28, 29. The first of the two, which contained both a response to defendant's RCW 4.24.535 special motion to strike, and a motion for a declaratory judgment regarding the constitutionality of the statute, ran to sixteen pages. Dkt. # 28. The second response, which opposed the motion to dismiss, contained thirty-two pages. Dkt. # 29. Plaintiff attempted to justify the excess pages by stating on each response that an identical copy was being filed in each of the three cases in which he had pending motions to dismiss. That is so, however, in none of the three cases did plaintiff seek permission to file an overlength brief as required. Local Rule CR 7(f).

The day after he filed his two untimely response memoranda, plaintiff filed a motion for relief from deadlines, asking the Court to excuse his failure to comply with the deadline set in the Court's Order of August 12, 2011. Nowhere in the request did he address or even acknowledge the Court's clear statement that no further extensions would be granted. Instead, he offered another litany of excuses, mainly relating to a lightning strike which disabled his internet

connection on the evening of August 22.  Dkt. # 31.   The Court denied the motion for extension of time, and denied or struck other motions filed by plaintiff,  which means that the responses and plaintiff's subsequent motions will not be considered.[4]  Dkt. # 39.  Such denial is proper under Fed.R.Civ.P. 6(b)(1)(B), as plaintiff has failed to demonstrate that his late filings resulted from excusable neglect.  The lightning strike might serve as an excuse for one day's delay, but not three.  Instead, as plaintiff states in his motion, he simply wanted more time to complete his memoranda.[5]  Dkt. # 31, p. 4.

Although plaintiff is proceeding *pro se*, he is a graduate of law school, and has demonstrated that he is very capable in the area of legal research and writing.   He has also demonstrated, as set forth above, a lack of regard for rules and deadlines, even when the Court set a date certain for his opposition to dismissal.  Such continued disregard of Court rules and

---

[4] Among the motions struck by the Court was one designated by plaintiff as a "SLAPP-back" motion. Dkt. # 30.  This was a defensive motion filed by plaintiff to strike the Seattle Times' anti-SLAPP motion.  The Court found that there was no provision in the Washington statute for such a defensive motion.  Plaintiff has filed a response to this, asserting that "SLAPP-back motions are well known in this field of law," and advising the Court that a Google search of the term "yields over four thousand hits."  Plaintiff's Motion to Lift Stay of Discovery, Dkt. # 40, p. 2.  The Court refers plaintiff to the California anti-SLAPP statute, which provides for a "SLAPPback" lawsuit under that name, and likely accounts for the Google "hits".  Cal.Code Civ.Proc. § 425.18.  A California SLAPPback is not a defensive motion against an anti-SLAPP motion to strike, such as plaintiff attempted;  it is in the nature of a suit for malicious prosecution filed by a SLAPP defendant who prevails in his anti-SLAPP motion to strike.  According to the statute, "SLAPPback" means "any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16."  Cal.Code Civ.Proc. § 425.18(b)(1).  Since the California statute provides only for recovery of attorneys' fees and court costs by a successful anti-SLAPP defendant, the SLAPPback section provides a vehicle to obtain additional damages.   Thus the party filing a SLAPPback in California is the defendant in the original action, who prevailed in an anti-SLAPP motion to strike.  Plaintiff had it backwards.  Moreover, the Washington statute contains no similar provision for a "SLAPPback."

[5] Plaintiff filed the same two memoranda in opposition to the motion to dismiss in three cases, putting all three case numbers in the caption and indicating that the cases were "consolidated."  These cases have never been consolidated.  *See*, Dkt. ## 28, 29.

deadlines will not be tolerated.  The Court hereby STRIKES plaintiff's overlength and untimely response memoranda.  Dkt. ## 28, 29.

The Court will now proceed to rule on the motion to dismiss and motion to strike. Because plaintiff has failed to properly oppose these motions, his failure may be deemed by the Court as an admission that the motions have merit.  Local Rule CR 7(b)(2).  Nevertheless, the Court shall briefly review defendant's arguments to determine whether they have merit.

## DISCUSSION

### I.  Rule 12(b)(6) Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F. 2d 696, 699 (9th Cir. 1990).  To sufficiently state a claim and survive a motion to dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions" or the "formulaic recitation of the elements of a cause of action will not do." *Id*.  The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted).  Apart from factual sufficiency, a complaint is also subject to dismissal where it lacks a cognizable legal theory, or where the allegations on their face "show that relief is barred" for some legal reason. *Balistreri*, 901 F. 2d at 699; *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In determining whether to grant a motion to dismiss, the Court must accept as true all "well-pleaded factual allegations" in the complaint. *Iqbal*, 129 S. Ct. at 1950.  The Court is not, however, required to accept as true "allegations that are merely conclusory, unwarranted

deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001). Nor is the Court required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).

In general, the Court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered. *Hal Roach Studios, Inc., v. Richard Feiner & Co.*, 896 F. 2d 1555 n. 19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," may be considered in ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F. 3d 449, 454 (9th Cir. 1994). Also subject to consideration under Fed.R.Evid. 201 are matters of public record, of which the Court may take judicial notice. *Mack v. South Bay Beer Distrib.*, 798 F. 2d 1279, 1282 (9th Cir. 1986).

Turning to the allegations in the complaint, and defendant's motion to dismiss them, the Court finds that plaintiff's defamation and "defamation per se" claims fail to state a claim. The elements of a cause of action for defamation in Washington are (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages. *Herron v. KING broadcasting Co.*, 112 Wash. 2d 762, 768 (1989). To establish the falsity element, the plaintiff must show the challenged statement was "provably false." *Schmalenberg v. Tacoma News, Inc.*, 87 Wash. App. 579, 590-91 (1997). "Expressions of opinion are protected by the First Amendment" and are" not actionable." *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 55 (2002) (quoting *Camer v. Seattle Post-Intelligencer*, 45 Wash. App. 29, 39 (1986).

The defamatory statements alleged by plaintiff are that he "disappeared," "vanished," "was missing," "unexpectedly left town," "refused to provide any comment," was "unreachable," and that the closure of the medical practice "was a mystery." Amended Complaint, Dkt. # 4, ¶¶ 25-28, 36-38. Nowhere in the complaint has plaintiff alleged when or where such statements were made, or what statements were actually made by the Seattle Times. His Amended Complaint is almost exactly the same as the complaint he filed against KIRO-TV, and as to the alleged statements, it is identical. *See*, *Phillips v. KIRO-TV*, C11-379RSM, Dkt. # 4, ¶¶ 25-28, 36-38. Nowhere does plaintiff separately identify the statements allegedly made by the Seattle Times from the statements allegedly made by KIRO-TV. His defamation claim against the Seattle Times fails on this deficiency alone, as such scattershot and unsubstantiated allegations cannot withstand a motion to dismiss.

The Seattle Times has provided a declaration by the senior editor, attaching a copy of an article about plaintiff that appeared on the Seattle Times website on April 2, 2008. Declaration of David Boardman, Dkt. # 12. The article was written by a reporter for the Seattle Post-Intelligencer and provided to the Seattle Times by the Associated Press. *Id*. Although the article appears on the Seattle Times' website, it never appeared in the published editions. *Id.* ¶ 4. The only statement among the ones that plaintiff lists in his complaint that actually appears in the article is that Dr. Phillips "unexpectedly left town." *Id*., Exhibit A. This is not an actionable false statement; according to the article Dr. Phillips' departure was indeed not expected by his patients.

Defamatory meaning may not be imputed to true statements, or to statements of opinion such as that someone "unexpectedly left town." *Lee v. Columbian, Inc.,* 64 Wash. App. 534, 538 (1991); *Robel v. Roundup Corp.*, 148 Wash. 2d at 55. Courts give words their "natural and

obvious meaning" and may not extend the language by "innuendo or by the conclusions of the pleader." *Lee*, 64 Wash. App. at 538 . The "defamatory character of the language must be apparent from the words themselves." *Id*. Here, the single statement alleged by plaintiff which actually appeared in the Seattle Times website article is neither false nor defamatory in character.[6] Defendant's motion to dismiss the defamation claims (Counts I and II) shall accordingly be GRANTED.

In the absence of a claim for defamation, plaintiff's claim of intentional infliction of emotional distress (outrage) also fails. The elements of the tort of outrage are (1) extreme or outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional distress. *Robel v. Roundup Corp.*, 148 Wash. 2d at 41. The extreme or outrageous conduct alleged here is the alleged defamation, which has been dismissed. An emotional distress claim based on the same facts as an unsuccessful defamation claim "cannot survive as an independent cause of action." *Harris v. City of Seattle*, 315 F. Supp. 2d 1105, 1112 (W.D.Wash. 2004); *quoting Leidholdt v. L.F.P. Inc.,* 860 F. 2d 890, 893 n. 4 (9th Cir. 1988). Further, plaintiff has failed to properly allege severe emotional distress. His bare and conclusory allegations at ¶¶ 102-104 of the Amended Complaint that he "became emotionally distressed," that the distress "manifested itself in physical symptoms," and that he "obtained treatment" for his distress and symptoms are a mere "formulaic recitation of the

---

[6] The article contains other information about plaintiff which may be troubling to him, such as his scheduled appearance in Renton Municipal Court to answer criminal misdemeanor charges related to a party at his home, at which minors were served alcohol. The article also states that plaintiff gained "some fame" for his short-lived marriage to Olympic gymnast Shannon Miller. Dkt. # 13, Exhibit A. Plaintiff's defamation claim does not include these statements nor, in light of the fact these are matters of public record, could it.

ORDER GRANTING MOTION TO DISMISS - 11

elements of a cause of action " and in the absence of factual detail are wholly insufficient to state a claim. *Bell Atlantic Corp. v. Twombley*, 550 U.S. at 555.

A claim of negligent infliction of emotional distress requires the plaintiff to prove that he "has suffered emotional distress by objective symptomatology and the emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Kloepfel v. Boker*, 149 Wash. 2d 192, 197 (2003). As shown above, plaintiff has not alleged any symptoms or made any specific allegations regarding his medical diagnosis; he has not gone beyond the mere formulaic recitation that he has unnamed symptoms. The claims of intentional and negligent infliction of emotional distress (Counts III and IV) are therefore subject to dismissal for failure to state a claim, and defendant's motion is GRANTED as to these claims.

Plaintiffs' claims of intentional interference with contractual relations and interference with a prospective advantage (Counts V and VI) fail because he has again simply recited some of the elements of the torts, without providing any factual detail. Moreover, his claim of interference with a prospective advantage, which presumably refers to the intentions stated at ¶¶ 14 and 15 of the amended complaint (stating a desire to obtain employment as an expert witness in the field of medicine) is highly implausible. It is plaintiff's misdemeanor conviction of furnishing alcohol to minors and making false statements to police, a matter of public record of which the Court may take judicial notice, along with other details provided by plaintiff here,[7] which will undermine his ability to obtain employment as an expert witness in his field, not any statements made by defendant in the article at issue. For a claim to survive a motion to dismiss, "the non-conclusory factual content and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

---

[7] See *supra*, note 2.

F. 3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). Plaintiff's claims at Counts V and VI wholly fail to meet this plausibility standard. Defendant's motion shall accordingly be granted as to Counts V and VI, and these claims are DISMISSED.

Defendant moves to dismiss plaintiff's false light claim (Count VII) on the basis that Washington law has not recognized such a tort, as well as the argument that plaintiff's false light claim is merely a duplicate of his defamation claim. Plaintiff in response cited a recent case in which a Washington court allowed a false light claim to go to the jury, and the Washington State Court of Appeals found this was not an error. *Corey v. Pierce County*, 154 Wash. App. 752, 761 (2010). Although the Court has stricken the document in which plaintiff cited this case (Dkt. # 28), the Court will nevertheless address this case and its effect on plaintiff's false light claim.

The *Corey* court noted that "[a] false light claim arises when 'someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" *Id*., *quoting Eastwood v. Cascade Broadcasting Co*., 106 Wash. 2d 466, 470-71 (1986). Further, "like defamation, false light claims require a showing of falsity and knowledge of, or reckless disregard for that falsity." *Id*. Thus defendant is correct that plaintiff's false light claim simply duplicates his defamation claim. Both require a showing of false statements. The Court has determined that plaintiff failed to adequately allege any false statements by the Seattle Times. This determination is dispositive of the false light claim. Defendant's motion to dismiss shall be GRANTED as to Count VII, false light.

Plaintiff's final cause of action (Count VIII) is for "civil harassment." Defendant correctly argues that Washington does not recognize a cause of action for damages for civil

harassment. The civil harassment statute provides only for "a speedy and inexpensive method of obtaining civil antiharassment protection orders." RCW 10.14.010. Plaintiff has cited to no Washington statute or common law which would provide relief in the form of damages as he requested. Amended Complaint, Dkt. # 4, ¶ 161. Defendant's motion to dismiss shall accordingly be GRANTED as to the civil harassment claim.

As an additional basis for dismissal, defendant correctly argues that all of plaintiff's claims are outside the applicable (two-year) statute of limitations. Plaintiff's argument that the article was a continuing tort is without merit, as is his contention that the statute of limitations was tolled by the automatic stay imposed by 11 U.S.C. § 362(a) during his bankruptcy proceedings. Such stay applies only to actions against the debtor, not to lawsuits such as this one brought by the debtor. The section which does apply is 11 U.S.C. § 108(a), which extends the applicable statute of limitations from the date the bankruptcy petition was filed. *Sears Petroleum & Transport Co. v.Burgess Construction Services, Inc.,* 417 F. Supp. 2d 212, 223-24 (D.Mass. 2006) (citing *In re AMS Realty, Inc.*, 114 B.R. 229, 232 (Bankr. C.D.Ca. 1990). Under this provision the statute of limitations began to run on the day plaintiff filed for personal bankruptcy, July 2, 2008, and expired two years later, on July 2, 2010. This lawsuit, filed in 2011, is time-barred.

II. Special Motion to Strike Pursuant to RCW 4.24.525

The Washington anti-SLAPP law provides, in relevant part, that "[a] party may bring a special motion to strike any claim that is based on an action involving public participation" as defined in the statute. RCW 4.24.525(4)(a). The section applies to "any claim, however characterized, that is based on an action involving public participation and petition." RCW 4.24.525 (2). An act involving public participation includes "[a]ny oral statement made . . . in a

place open to the public or a public forum in connection with an issue of public concern" and "other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public concern. . ." RCW 4.24.525(2) (d) and (e).

An anti-SLAPP law provides relief to a defendant which is in the nature of immunity from suit. *Batzel v. Smith*, 333 F. 3d 1018, 1025 (9th Cir. 2003) (addressing California's anti-SLAPP statute.) In passing the law, the Washington legislature noted a concern regarding lawsuits "brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech" as well as a concern over the chilling effect of "the costs associated with defending such suits." RCW 4.24.525, notes 2010 c 118. The statute accordingly provides for an award of attorneys' fees and costs, plus a statutory award of $10,000, to a defendant who prevails on an anti-SLAPP motion. RCW 4.24.525(6)(a)(i), (ii). Conversely, if the Court finds that the anti-SLAPP motion to strike was frivolous or brought solely to cause unnecessary delay, costs, attorneys' fees, and $10,000 shall be awarded to the opposing party. RCW 4.24.525.(6)(b)(i), (ii). The special motion to strike is therefore not without risk to the moving party.

Defendant filed the anti-SLAPP motion at the same time, and in the same document, as the Rule 12(b)(6), without designating it as a motion in the alternative. Nevertheless, the Court shall decline to rule on the anti-SLAPP motion, as it has already determined that plaintiff's complaint shall be dismissed in its entirety for failure to state a claim. Such dismissal shall be without leave to amend, as set forth below. No claims remain to be stricken pursuant to defendant's motion to strike, so the motion is moot.

Defendant may argue that additional relief is available through the anti-SLAPP motion to strike, including costs, attorneys' fees, and the statutory award of $10,000. While this amount is

significant, it is outweighed by the burden on the parties and the Court of proceeding to consider the motion, because the Court could not do so without first addressing plaintiff's renewed motion for a declaratory judgment on the constitutionality of the Washington anti-SLAPP statute. Dk.t. # 43. Defendant could have avoided this result by filing the Rule 12(b)(6) motion first, to be followed by an anti-SLAPP motion only if the Rule 12(b)(6) motion did not fully dispose of the claims. Instead, the Court shall declare the anti-SLAPP motion moot, as there are no claims remaining to be stricken.

CONCLUSION

Defendant's Rule 12(b)(6) motion to dismiss the complaint and all claims therein (Dkt. # 7) is GRANTED and the complaint and action are DISMISSED. Plaintiff shall not have leave to amend, as any amendment would be futile under the statute of limitations applicable to his claims. Defendant's anti-SLAPP motion to strike plaintiff's claims is DENIED as moot. All remaining motions filed by plaintiff are STRICKEN.

Dated this 5th day of October 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE